UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| Theriot | Civil Action No. 6:17-01688 |
| versus | Unassigned District Judge |
| State Farm Mutual Automobile Insurance Company et al | Magistrate Judge Carol B. Whitehurst |

### REPORT AND RECOMMENDATION

Before the Court is a Rule 12(b) Motion To Dismiss filed by State Farm Mutual Automobile Insurance Company, State Farm Life Insurance Company, State Farm Fire and Casualty Company and State Farm General Insurance Company ("State Farm") [Rec. Doc. 8], Plaintiff Kathryn[1] H. Theriot's Memorandum in Opposition [Rec. Doc. 15] and State Farm's Reply [Rec. Doc. 20]. For the following reasons, the undersigned recommends that the Motion to Dismiss [Rec. Doc. 8] be denied.

*I. Factual and Procedural Background*

Plaintiff, Katheryn Theriot ("Theriot"), is the surviving spouse of John Patrick Theriot ("Pat Theriot"), who prior to his death was a State Farm insurance agent in St. Martinville, Louisiana for many years. *R. 1-1, ¶ 2*. Pat Theriot entered into an Agent's Agreement with State Farm in 1994 ("Agent's Agreement"). Section IV of the Agent's Agreement provided for sixty (60) monthly termination payments to start when it was terminated ("initial termination payments"). Under Section V, extended termination payments would begin on the 61st month after termination of the Agent's Agreement and would continue until the month of the decedent's death.

---

[1] Both parties indicate the petition was erroneously styled "Katheryn H. Theriot" rather than "Kathryn H. Theriot."

A joint and survivor option could replace the applicable terms for entitlement to these extended termination payments by amendment prior to the agent's death. *R. 1-1, ¶¶ 2,3*; *Succession of Theriot*, 221 So.3d 862, 864 (La.App. 3 Cir., 2017). The actual amount of the termination payments owed by State Farm cannot be determined until the Agent's Agreement is terminated and the final figures become available to State Farm. *R. 15, Exh. 1*.

On August 28, 2013, Pat Theriot and representatives of State Farm met and entered into several contracts which amended the Agent's Agreement, including the following: (1) Termination Payment Amendment; (2) Extended Termination Payment Amendment; (3) Irrevocable Assignment of Extended Termination Payments; and (4) Election to Receive Extended Termination Payments Under the Joint and 66-2/3% to Survivor Option. *R. 1-1, ¶ 4, R. 15, Exh. 2*. The contracts specifically named Theriot as Pat Theriot's assignee and beneficiary for the termination payments. *R. 1-1, ¶ 4*.

Pat Theriot died on September 6, 2013. At that time, the Agent's Agreement terminated and State Farm became obligated to pay termination payments to Theriot pursuant to the Election To Receive Extended Termination Payments Under the Joint And 66-2/3% To Survivor Option. *Id. at ¶ 5, R. 15-1, Exh.2*. On November 19, 2013, State Farm sent correspondence to Theriot confirming that it owed termination payments directly to her as Pat Theriot's beneficiary under the direct assignment contracts executed by Pat Theriot and State Farm prior to Pat Theriot's death. The correspondence stated:

> This letter is to confirm that you are set to receive Termination Payments for 5 years in the estimated amount of $13,935. You are also set to receive Extended Termination Payments starting the 6th year and paid to you until your death in the estimated amount of $5,969.
>
> These payments are paid from Pat Theriot's agent's agreement with State Farm.

*R. 1-1, ¶ 6*, *R. 15-1, Exh. 3*. In November of 2013, State Farm made one termination payment to Theriot. *Id. at* ¶ 12. Thereafter, State Farm refused to pay additional termination payments to Theriot. *R. 1-1, ¶ 6*.

Pat Theriot's succession proceeding to probate his Last Will and Testament was opened in the 16th Judicial District for the Parish of St. Martin, State of Louisiana (hereafter "state district court"). *R. 1-1, ¶¶ 5, 9*. Within the succession proceeding, the Theriot Trust, composed of Pat Theriot's five children, asserted that it was entitled to receive the termination payments under the Will; the Executor and Theriot disputed the Theriot Trust's claim. *1-1, ¶ 8*. State Farm then filed a Petition in Intervention for concursus within the succession proceeding. State Farm made the following admission in its Petition In Concursus:

> 10. State Farm acknowledges that termination payments are due to be paid for sixty months following Pat Theriot's death pursuant to an Agent's Agreement signed by Pat Theriot prior to his death
>
> 11. Pursuant to a promise of indemnification, State Farm made one termination payment to Kathy Theriot on or about the first of November 2013 in the amount of $15,078.67.

Theriot submits in her opposition and the record confirms that State Farm took no steps to have the concursus decided—it did not deposit any termination payments into

3.

the registry of the court and did not seek an adjudication of competing claims. The concursus was abandoned by State Farm after the trial court in the succession proceeding rendered its judgment. *R. 15, pp. 9-10.* In its opinion, the Third Circuit found that the concursus was "moot.*" Succession of Theriot*, 221 So.3d 221 So. 3d 862, 875 (La. App. 3 Cir. 5/17/2017).

Theriot filed an Intervention into the succession proceedings seeking a judgment rejecting all competing claims to the termination payments and an award of those payments to her. *R. 15-5.* The trial court held that the initial termination payments were owed to the Theriot Trust under Pat Theriot's Will. The trial court also held that extended termination payments were not owed to anyone. Theriot, the Executor and State Farm all filed appeals from the judgment.

On May 17, 2017, the Louisiana Third Circuit resolved the dispute in the succession proceeding by reversing the state district court's judgment in favor of the Theriot Trust and rendering judgment in favor of Theriot. *R. 1-1, ¶¶ 8, 9, 10; Succession of Theriot,* 221 So. 3d at 865. The court stated,

> We render judgment declaring that the proper recipient of those initial payments is Kathryn Hempel Theriot... We render judgment holding that those extended termination payments are owed to Kathryn Hempel Theriot.

Also, the Third Circuit held that the concursus was moot and that State Farm was not entitled to any of the benefits of a properly conducted concursus procedure. *Id.* at 875. Theriot's petition acknowledges that on October 10, 2017, and on October 31, 2017, more than four (4) years after the Termination Payments became due and payable, State Farm made respective payments of $650,000.00 and $24,846.11 to her.

4.

*R. 1-1, ¶¶ 18, 19.* Theriot made amicable demand upon State Farm for an accounting of the actual amount of the Termination Payments which State Farm owed to her, using the accounting data which in the possession of State Farm. State Farm refused such an accounting and further refused to provide any data from which the actual amount of the presently owed Termination Payments could be calculated. *Id. at ¶ 20.*

In her Complaint, Theriot prays for Judgment including: (1) Full accounting of all Termination Payment owed under the Agent's Agreement from September 6, 2013 through the present date and into the future; (2) Full disclosure of all underlying data used in the calculation of Termination Payments owed to Theriot; (3) All damages incurred by Theriot due to State Farm's bad faith breach of its obligations under the Agent's Agreement, including damages for delay, legal interest on all amounts due, all attorney fees and expenses incurred in the probate proceedings, mental anguish and inconvenience, and loss of necessary funds owed; (4) All additional Termination Payments owed as determined by a complete accounting; (5) A full accounting and disclosure of all unjust enrichment and investment income realized by State Farm due to the bad faith retention and investment of the Termination Payments; (6) An award to Theriot disgorging all unjust enrichment realized by State Farm by its retention of the Termination Payments; (7) Damages caused by State Farm's fraud by concealment and refusal to disclose the amount of Termination Payments due or owed and how they are calculated as well as all attorney fees, expenses and costs incurred in the present lawsuit; (8) For all costs of these

proceedings and legal interest on all amounts owed; and (9) For all general and equitable relief, etc. *R. 1-1*.

## II. The Succession Proceedings

State Farm submits that the Court should take judicial notice of the following information from the prior succession proceeding, *Succession of Theriot*, Docket No. 15421, 16th Judicial District Court, St. Martin Parish, Louisiana and the subsequent appeal in that case. State Farm asserts these documents are salient to the instant motion. "A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed.R.Evid. 201(b). When reviewing a motion to dismiss, a district court "must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322, (2007)). The Court will take judicial notice of the following documents which are located in the record and are not subject to dispute:

1. On September 12, 2013, letters testamentary were issued in relation to the appointment of Allan Durand as Executor of the Succession of John Patrick Theriot, *R. 8, Exh. A;*

2. On November 22, 2013, the Executor filed a petition for possession to place Theriot in possession of the Termination Payments, *Succession of Theriot,* 221 So. 3d at 865, *Exh. B;*

3. Pat Theriot's "other heir" that made a claim to the Termination Payments was a testamentary trust ("Theriot Trust"), established in favor of Pat Theriot's children; the Theriot Trust responded to the Executor's petition for possession with a dispute as to Theriot's right to receive the Termination Payments, *Id. at Exh. C;*

3. Thereafter, on May 7, 2014, the Executor filed a petition against State Farm to reform the Agent's Agreement to have Theriot recognized in that agreement as the proper recipient of the Termination Payments, *Id. at Exh. D;*

4. State Farm intervened in the succession by filing a concursus petition and sought the ability to deposit the Termination Payments into the court's registry, to which Theriot answered, *Id. at Exh. E, F;*

5. The state district court rejected and dismissed State Farm's concursus petition, *Id. at Exh. G, J-1;*

6. Theriot intervened in the succession to assert her claim for Termination Payments, *Id. at Exhs. H, I;*

7. Theriot filed a motion for summary judgment seeking a ruling that she was entitled to Termination Payments, which the state district court denied, *Id. at Exh. M;*

8. On May 5, 2015, a trial was held on all claims related to Termination Payments, including those asserted in Theriot's intervention and in the Executor's petition to reform the agreements, *Id. at Exh. H-1*;

9. On July 20, 2015, the state district court issued a judgment against Theriot and in favor of the Theriot Trust, and also in favor of State Farm, as follows: the Termination Payments due under Section IV of the Agent's Agreement would be owed to the Theriot Trust, and State Farm would not owe anyone the Extended Termination Payments provided by Section V of the Agent's Agreement, *R. 8-1, Exh. J, J-1*;

10. The parties (including Theriot) timely appealed, and on May 17, 2017, the Louisiana Third Circuit reversed the judgment of the state district court and rendered judgment in favor of Theriot, *R. 1-1, ¶ 10, R. 15-3, John Patrick Theriot,* 221 So. 3d at 865;

11. A timely application for writ of certiorari was made to the Louisiana Supreme Court, and that application was denied on September 29, 2017, *R. 8-1,Exhs. K, L*;

12. The judgment of the Louisiana Third Circuit became final on October 6, 2017. La. C.C.P. art. 2166(E).

### *III. Contentions of the Parties*

State Farm contends that Plaintiff's claims for nonpayment and breach of its duty of good faith should be dismissed because (1) her claims are barred by *res judicata* since she could have brought them in the succession proceeding; (2) she is

not the proper party to raise the claims asserted against State Farm; (3) it was not until the Third Circuit's judgment became final on October 6, 2017, that Plaintiff was recognized as the proper recipient of the Termination Payments; and (4) Plaintiff has failed to allege bad faith on the face of her petition.

Plaintiff disputes that *res judicata* precludes her claims in this case because the issue of "proper beneficiary" litigated in the probate proceeding is different from the instant breach of contract action; the claims in this case did not exist until after the trial court judgment in the succession proceeding; the claims did not arise out of the same transaction or occurrence; her claims for breach of the duty of good faith and fair dealing and fraud did not exist until October 2017 when State Farm refused to disclose its calculations and data underlying the Termination Payments. Finally, Plaintiff argues because she was assigned all rights to receive Termination Payments under the Agent's Agreement, she has every right to enforce that contract.

## IV. Rule 12(b)(6) Standard

A court may grant a motion to dismiss for "failure to state a claim upon which relief can be granted" under Fed. R. Civ. P. 12(b)(6). A pleading states a claim for relief when, inter alia, it contains a "short and plain statement ... showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To withstand a motion to dismiss, "a complaint must contain sufficient factual matter accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Id*. Plausibility does not equate to possibility or probability; it lies somewhere in between. *Id*. Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim. *See Twombly*, 550 U.S. at 556. The court must view all well-pleaded facts in the light most favorable to the plaintiff. *Yumilicious Francise, L.L.C. v. Barrie*, 819 F.3d 170, 174 (5th Cir. 2016).

Although the court must accept as true all factual allegations set forth in the complaint, the same presumption does not extend to legal conclusions. *Iqbal*, 556 U.S. at 678. A pleading comprised of labels and conclusions, a formulaic recitation of the elements of a cause of action, or naked assertions devoid of further factual enhancement will not stand. *Id*. Similarly, where the well-pleaded facts do not permit the Court to infer more than the mere possibility of misconduct, the complaint has alleged—but not "shown"—that the pleader is entitled to relief. *Id*. at 679.

In determining whether a complaint states a plausible claim for relief, the Court draws on its judicial experience and common sense. *Id*. In considering a motion to dismiss, a court can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. *Id*. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. *Id*.

10.

*V. Analysis*

State Farms brings this motion under Rule 12(b)(6) of the Federal Rules of Civil Procedure. As provided in the foregoing, in its ruling under 12(b)(6) the Court must determine whether Plaintiff's Petition states a plausible cause of action when viewed in the light most favorable to the plaintiff and with every doubt resolved in favor of the plaintiff. In light of this standard, the Court will review the contentions set forth in State Farm's motion.

*A. Res judicata*

State Farm contends Plaintiff's claims for breach of contract and bad faith alleged in this action existed at the time of the succession proceeding and involved the same causes of action asserted in this action. State Farm further contends that Plaintiff's "claim certainly existed" on May of 2017, when the Louisiana Third Circuit issued its judgment. State Farm states that Plaintiff's claim against it is actually for "prejudgment interest" which she could have asserted in the succession proceeding.

A state court's judgment (such as the Third Circuit Judgment in this case) bars a subsequent federal suit if "(1) the judgment is valid; (2) the judgment is final; (3) the parties to the two actions are the same; (4) the cause of action asserted in the federal suit existed at the time of the prior state court judgment; and (5) the cause of action asserted in the federal suit arose out of the transaction or occurrence that was the subject matter of the state court litigation. *See* La.R.S. 13:4231. Louisiana's doctrine of *res judicata* can only be invoked if all essential elements are present and

established beyond all question." *Lafreniere Park Foundation v. Broussard*, 221 F.3d 804, 809 (5th Cir. 2000).

Plaintiff argues that her cause of action for bad faith breach of the Agent's Agreement and breach of the duty of good faith and fair dealing under Louisiana Civil Code Article 1983 did not exist at the time of the prior state court judgment. She further argues that the litigation was conducted entirely within a succession proceeding and she was not a plaintiff and it did not arise out of the same transaction or occurrence as the claims in this lawsuit.

In her Petition for Breach of Contract and for Damages, *R. 1-1*, Plaintiff acknowledges that the ruling of the Third Circuit Court of Appeal does have some *res judicata* effect. In paragraph 11 of the Petition Plaintiff alleges, "The issue of the proper beneficiary of the Termination Payments under the Agent's Agreement was litigated entirely within the probate proceeding." The Third Circuit's final judgment obligated State Farm to pay all Termination Payments which were owed to Plaintiff under the terms of the Agent's Agreement. This became an issue during the succession proceeding of Pat Theriot when the testamentary heirs under the will asserted a competing claim against Plaintiff as to whether and to whom the Termination Payments were owed under the Agent's Agreement.

Plaintiff argues that her claims in this case did not arise until *after* the trial court in the succession proceeding issued a judgment declaring that the Termination Payments should be paid to the testamentary heirs and *after* the Third Circuit reversed the district court and ruled that State Farm owed her the Termination Payments.

While the claims in the succession proceeding involved competing claims to the Termination Payments, the instant claims did not arise until after the final state court judgment was rendered and State Farm rendered its performance. Plaintiff asserts that State Farm bears the burden of proving that she could/should have brought the claims in the succession proceeding. *Matter of Howe*, 913 F.2d 1138, 1146-47 (5th Cir. 990). She further asserts, even if known to Plaintiff during the succession proceeding (which they could not have been known) "[t]here was no procedural mechanism to litigate claims of breach of contract or defective performance"in the succession proceeding and State Farm provides no support for its contention otherwise.

 State Farm also contends that Plaintiff's claims asserted in this suit arose out of the transaction or occurrence that was the same subject matter of the state court litigation. In support State Farm states that Plaintiff filed a petition for intervention and a summary judgment motion in the succession proceeding seeking a finding as to the Termination Payments. The record provides that Theriot's filings in the state proceeding were actually "to assert her claim to the property left to her by her husband and oppose the efforts of the Trust." *R. 8-9*.

 "To determine whether the prior and current suits involve the same cause of action for purposes of *res judicata*, Louisiana courts have applied the transactional test employed under the federal counterpart. Under the transactional test, a prior judgment's preclusive effect extends to all rights of the plaintiff with respect to all or any part of the transaction, or series of connected transactions, out of which the [original] action arose." *Bailey v. Oakbourne Country Club, Inc.*, 2015 WL 4622418,

13.

at *4 (W.D.La.,2015) (citing *North American Treatment Systems, Inc. v. Scottsdale Ins., Co.*, 943 So.2d 429, 439–440 (La.App. 1st Cir.2006)). "What grouping of facts constitutes a 'transaction' or a 'series of transactions' must 'be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.'" *Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 313 (5th Cir. 2004)(quoting the Restatement (Second) of Judgments § 24(2) (1982)). Thus, the court must review the facts contained in each complaint to determine whether they are part of the same transaction or series of transactions, which arise from the same nucleus of operative facts.

In her Petition, Plaintiff alleges, "[t]he single issue of whether Kathy Theriot was the proper beneficiary of all Termination Payments under the Agent's Agreement was litigated within the Succession...." *R.1-1, ¶9.* She further alleges,

> The issue of the proper beneficiary of the Termination Payments under the Agent's Agreement was litigated entirely within the probate proceeding. Kathy Theriot was not a plaintiff and State Farm was not a defendant.
>
> Despite the fact that Termination Payments were owed to Kathy Theriot each month beginning upon the death of Pat Theriot... State Farm made only one payment in November of 2013. State Farm breached its obligation in bad faith...."

*Id. at ¶¶ 11, 12.*

In addition to the foregoing, Plaintiff alleges in Paragraph 14, that State Farm did not make periodic Termination Payments and did not deposit Termination

14.

Payments into the registry of the Court. *Id. at ¶ 14*. She contends that such failure was a bad faith breach of State Farm's obligations for which it was unjustly enriched. *Id. at ¶¶ 14, 15*. Plaintiff further alleges,

> On October 10, 2017, more than four (4) years after Termination Payments became due and payable, State Farm made a payment to Kathy Theriot in the amount of $650,000.00, in partial payment of its outstanding and long-overdue Termination Payment obligation. The payment was not made voluntarily, but only after Kathy Theriot threatened seizure of State Farm's bank account.
>
> On October 31, 2017, State Farm made a payment to Kathy Theriot in the amount of $24,846.11, in partial payment of its outstanding and long-overdue Termination Payment obligation. This second payment was also made only under threat of seizure.
>
> After receipt of the partial payments from State Farm, Kathy Theriot made amicable demand upon State Farm for an accounting of the actual amount of the Termination Payments which State Farm owes to Kathy Theriot, using the accounting data which is in the sole possession of State Farm. State Farm refused to provide any calculation or accounting of the full amount of Termination Payments which are owed to Kathy Theriot and which accrued during its default, and further refused to provide any data from which the actual amount of the presently owed Termination Payments could be calculated.

*Id. at ¶¶ 18, 19, 20*. Plaintiff further alleged that these actions constituted fraud by concealment and violated the obligations under the Agent's Agreement by dishonesty and morally questionable motives. *Id. at ¶ 21*.

Plaintiff's Petition, including the allegations specifically set out above, provides that Plaintiff has alleged a plausible claim for breach of contract and breach of good faith and fair dealing under the terms of the Agent's Agreement. They also provide that Plaintiff's claims did not arise until after the final ruling in the succession proceeding, and dispute that her claims are merely for prejudgment interest. These allegations further support that Plaintiff's claims in the instant suit are not based on the same transaction

15.

or occurrence as they are not "related in time, space, origin, or motivation." Thus, the Court's analysis under Rule 12(b)(6) indicates Plaintiff's claims in this action are not precluded by *res judicata.*

B. Right of Action

State Farm also contends that Plaintiff does not have a cause of action because she is not the proper party to raise the claims she asserts in her Petition. State Farm states that the Third Circuit opinion makes it clear that her entitlement to the Termination Payments was by way of Pat Theriot's Will rather than the Agent's Agreement. As such, State Farm argues, Plaintiff must be placed in possession of the Termination Payments through a judgment of possession before she can assert the claims before the Court.

In Paragraph 4 of her Petition Plaintiff alleges,

> Prior to his death, Pat Theriot assigned and donated his initial and extended Termination Payments to his wife, Kathy Theriot, making Kathy Theriot the beneficiary of all Termination Payments payable under the Agent's Agreement. In order to accomplish the assignment and donation of Termination Payments to Kathy Theriot, Pat Theriot, individually and on behalf of his incorporated insurance agency, executed amendments to the Agent's Agreement, and also executed a Last Will and Testament confirming the assignment and donation....

R. 1-1, ¶ 4. Thus, Plaintiff's allegations provide that the deceased amended his contract with State Farm (Agent's Agreement) to provide that Termination Payments would be made to Plaintiff.

Further, and contrary to State Farm's statement that the Third Circuit's ruling stated that Plaintiff's right to the Termination Payments was solely based on the Will, the Third Circuit stated:

> ... [T]he decedent's intent for Ms. Theriot to receive both types of termination payments is bolstered by the actions of the decedent during

16.

the same month he signed his Will. He contacted State Farm in an attempt to achieve the result of Ms. Theriot receiving both types of termination payments. Then, he actually signed the paperwork he thought necessary to do so. Thus, in executing the August 28th documents, we find that the decedent made is intent clear.

*Succession of Theriot,* 221 So. 3d at 871.

The Court finds that Plaintiff has alleged a plausible right of action for her breach of contract and duty of good faith and fair dealing claims against State Farm.

*C. Bad Faith*

State Farm contends that Plaintiff has failed to allege bad faith on thepart of State Farm. Plaintiff responds that her claim for bad faith delay is based upon the fact that State Farm's obligation to make monthly termination payments was provided in the Agent's Agreement, admitted in its November 19, 2013 to Plaintiff, and admitted in State Farm's Petition in Intervention for Concursus. Despite this knowledge, State Farm failed to make the payments until over four (4) years after it acknowledged they were owed to Plaintiff.

Plaintiff further states that she has asserted claims for breach of the duty of good faith and fair dealing and fraud by concealment. She alleges that the Termination Payments are "determined through a complex formula" set out in the Agent's Agreement which "requires input of figures and accounting which is in the sole possession of State Farm." *R. 1-1, ¶ 17*. Plaintiff further alleged that after the partial payments, she made amicable demand upon State Farm for accounting of the actual amount of the Termination Payments. State Farm, however, refused to provide any calculation or accounting of the full amount of Termination Payments owed to

Theriot. *Id. at ¶ 20*. Plaintiff alleges State Farm's action of refusing to reveal the data used to calculate the payments owed to Plaintiff amounts to "dishonesty" and is "morally questionable" in that State Farm unilaterally determines the amounts due and makes the payments without oversight. She alleges State Farm's refusal to disclose the information at issue constituted fraud by concealment and breach of good faith and fair dealing under La. C.C. Art. 1983. *Id. at ¶ 21*.

Accepting all well-pleaded facts as true and viewing them in the light most favorable to Plaintiff, the Court finds that the allegations made against State Farm meet the plausibility standard in *Twombly* in that the Petition on is face contains enough factual matter to raise a reasonable hope or expectation that discovery will reveal evidence of Plaintiff's claim under La. C.C. Art. 1983. *See Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009).

### *VI. Conclusion*

Considering the foregoing, the undersigned recommends that State Farms's Motion to Dismiss [Rec. Doc. 8] be DENIED.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after being served with of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual

findings or the legal conclusions accepted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir.1996).

      Signed at Lafayette, Louisiana, this 4th day of April, 2018.

                                                               CAROL B. WHITEHURST
                                                               UNITED STATES MAGISTRATE JUDGE